## BYRD v. SPIRO.

### No. 16424.

Court of Appeal of Louisiana. Orleans.

Nov. 4, 1936.

Edw. S. Spiro, of New Orleans, for appellant.

Johnston Armstrong, of New Orleans, for appellee.

JANVIER, Judge.

This is a suit for personal injuries sustained by Caroline Byrd while on a visit to her daughter, who, with her husband, occupied a building owned by defendant, Louis Spiro. She alleges that as she walked across the gallery of the building one of the planks of which it was composed broke, and her right leg went through the hole, injuring it very badly, and incapacitating her for work for six months, and that she was required to remain in bed under the care of a physician for two months.

Defendant maintains that the gallery was in good condition, and that, if there were any defects, he did not know of them and could not have discovered them, but he relies principally upon the contention that plaintiff was a trespasser on the premises and that his obligation as landlord extended only to the tenant and to those persons who were occupying the premises as members of the family of the tenant. Defendant also maintains that plaintiff's injuries were not serious and that the amount awarded her in the judgment below, to wit, $845, was excessive.

■ Plaintiff was, obviously, lawfully upon the premises. The evidence shows that she was visiting her daughter, who was, as we have said, the wife of the tenant. Under these circumstances the obligation of the landlord to her was fixed by articles 670 and 2322 of the Revised Civil Code.

In Badie v. Columbia Brewing Co., 142 La. 853, 77 So. 768, 769, the Supreme Court said: "There is nothing in the facts of the case to distinguish it from

the recent case of Wise v. Lavigne, 138 La. 218, 70 So. 103, or from any of the several other cases in which the owner of a rented building was held responsible in damages for personal injuries suffered by a guest of the tenant from the failure of the owner to make needed repairs." See, also, Pierre v. Levy, 3 La.App. 769, in which we said: "If plaintiff was lawfully on the premises it makes no difference whether she was a tenant or otherwise."

■ That defendant did not, or could not, discover the defective condition of the gallery is of no importance, for, as has many times been held, notably in Badie v. Columbia Brewing Co., supra, the Supreme Court said: "It is contended finally that the defendant is not responsible for the injury because there was not sufficient time for repairing the railing after the defendant's agent learned that it was unsafe and before the accident happened. But it is well settled that ignorance of the unsafe condition of a structure, on the part of its owner, does not relieve him of the duty imposed by the Civil Code to maintain his property in a condition of safety to others. See Tucker v. I. C. Railroad Co., 42 La.Ann. 114, 7 So. 124; Barnes v. Beirne, 38 La.Ann. 280; Allain v. Frigola, 140 La. 982, 74 So. 404; Serio v. American Brewing Co., 141 La. 290, 74 So. 998, L.R.A.1917E, 516; Atkins v. Bush, 141 La. 180, 74 So. 897, L.R.A.1917E, 809. Surely the defendant is not less responsible for having learned of the unsafe condition of the railing too late to have repaired it before the accident happened than if the defendant had not known the condition at all before the accident happened."

This question is interestingly discussed by Judge Cage, the judge a quo, in his reasons for judgment:

" * * * The fact that the gallery appeared to be good is no excuse whatever. The law of Louisiana is rigid and harsh on the owner and whether the accident was caused by vices, latent or patent, it is all the same. There is no question involved of negligence or fault. I can employ the best architect in Louisiana to draw plans and specifications for a house and employ the best builder in Louisiana to take those plans and specifications and build that house and I can see to it, either through my own efforts or through the architect that I employ, that only the best quality of material is used and yet, when the house is completed, if through any mistake or vice in the plans, or any mistake or vice in construction, that house should collapse or give way, or any part thereof and any one lawfully on the premises should get hurt, I would be legally responsible.

"Again, I might purchase a house and before doing so, employ one of the best architects in Louisiana to examine it and tell me whether it was sound and whether I could safely live in it and yet, if termites had gotten in there and eaten the timbers and planks on the inside, leaving an apparently sound piece of wood and should the termite-eaten plank give way and hurt some one, I would be responsible."

■ We believe, however, that the amount awarded is excessive. While there is obviously no standard by which awards can be gauged, we must take into consideration those made for similar injuries in other cases. The evidence does not convince us that plaintiff was unable to work for six months, and on this point our brother of the District Court said: "She swears she was unable to work for six months. That seems to be a little extravagant to me."

Though plaintiff's leg was projected through the gallery to a point just beyond the knee, there were no lacerations except scratches on the skin, or outside surface of the leg. There was no bone broken, there were no ligaments torn, and there was no permanent incapacity, but only swelling which caused disability for a short time. The physician's services consisted solely in bandaging the injured part and making local applications. He did not attend her after March 3d, which was two months after the accident. We believe that an allowance of $300 for her physical injuries, together with the amounts awarded by the district judge for loss of wages and medical attention, $128 and $21 respectively, should amply compensate her for the losses sustained.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, amended by the reduction of the amount thereof to $449, and that, as thus amended, it be, and it is, affirmed, plaintiff to pay costs of appeal, all other costs to be paid by defendant.

Amended and affirmed.