**HOBBS v. TOM & PAL et al.** *

**No. 5293.**

Court of Appeal of Louisiana. Second Circuit.

Jan. 5, 1937.

594

Fink & Fink, of Monroe, for appellants.

J. Norman Coon, of Monroe, for appellee.

HAMITER, Judge.

Plaintiff's nose was injured when struck by a metal projection arm of an awning which overhung the sidewalk in front of defendants' place of business on Desiard street in the city of Monroe. The accident occurred about noon on October 12, 1935. At that time plaintiff was standing on the sidewalk, at the western end of the awning, conversing with several other men.

Defendants herein are Tom & Pal, a commercial partnership composed of Thomas Jennings and John (Pal) Jennings, and the individual members of such partnership. The partnership conducts a retail business of selling tobaccos and soft and hard drinks, the location of which is in rented premises.

Plaintiff, in this suit for damages, contends that defendants are liable under article 2315 of the Civil Code because the awning was negligently lowered by one of their employees, and also liable under articles 2322 and 670 of the Civil Code, in that they failed to maintain a safe awning and equipment attached to the rented premises.

An exception of no cause or right of action was filed by defendants. This was overruled.

In the answer, defendants denied negligence on their part, and averred, alternatively, that plaintiff was contributorily negligent. Under this affirmative defense, they allege:

"That the said plaintiff was standing near and leaning against that certain portion of the awning which he alleges fell on him and that either he or a person whose name is unknown to your defendants reached up and placed his hand on part of the iron bar or brace in such a manner as to cause the said awning to become loose and fall or slip down; that the proximate cause of said awning falling was the negligence of the said plaintiff in placing his hand on the same in the manner described aforesaid; that even in the event on trial of this cause it is shown that it was not plaintiff but the person or party with whom he was engaged in conversation who placed his hand on said iron bar or brace that caused the said awning to fall, that plaintiff was still guilty of contributory negligence inasmuch as he saw the said occurrence and should have realized the danger thereby and thus assumed the danger incurrent thereto."

At the commencement of the trial of the case on its merits, objection was made, under the above exception, to the introduction of all testimony. The objection was overruled, and the trial court's ruling was made general.

There was judgment in plaintiff's favor in the amount of $400, and for all costs of court. The costs included expert witness fees. Defendants appealed from this judgment.

Plaintiff has answered the appeal, praying that the judgment be amended by increasing the amount of damages awarded.

In this court, defendants' counsel seriously urge the exception of no cause or right of action. According to their brief, this is leveled at:

"* * * those allegations of plaintiff's petition which sought to hold defendants liable on the proposition that the awning was constructed improperly, that is, that there were defects in the original construction, and that the defendants did not properly maintain the awning. This exception was based on Codal articles 2322 and 670 in the Civil Code inasmuch as these articles impose that duty on the landlord or owner of the building, and that while plaintiff did allege that the awning was attached to the building, he did not allege that the defendants were the owners of the building or had cojointly with the owner of the building erected the awning in question."

■ In our opinion the exception was properly overruled. It was unnecessary for plaintiff to allege that defendants were the owners of the building or had conjointly with the owner of the building erected the awning in question. The petition discloses that the awning was attached to the premises and was owned and maintained by defendants. If defendants were alone responsible for the erection of the awning and its negligent and defective maintenance, and such proximately caused the injury, irrespective of whether they were owners or tenants of the building, said defendants would be liable. This we shall hereinafter more fully discuss.

On the merits of the case, it appears that the Monroe Tent & Awning Company erected the awning for defendants about eight months prior to the accident. It was of the rope-pulley slide-rod type. The frame, which was covered with canvas, was constructed of three-fourth and one-half inch galvanized pipe. At each end of the awning there was a pipe, known as a slide-rod, which was attached to the wall in a vertical position. Jaw-slides, on the end of projection arms, operated up and down on the slide-rods. The projection arms served to extend and support the awning outwardly when it was lowered to provide shade. When in this position, the projection arms were practically parallel with the sidewalk, and were maintained in place by pins inserted in the slide-bar. The awning was operated by means of four ropes, two of which were stationed on the eastern end and the others on the western end. To raise the awning, and cause its resting against the building, it was necessary that the pins be withdrawn and the jaw-slides pulled down on the slide-rod.

The version of the occurrence of the accident furnished by plaintiff's witnesses differs materially from that given by the witnesses for defendants. According to the first-mentioned witnesses, plaintiff was standing on the sidewalk at the western portion of the awning. Engaged in conversation with him were several of his friends. The awning was in a raised position, resting against the building. A colored porter in defendants' employ emerged from the door of the premises, walked to the eastern side of the building, and unwound the ropes that were there fastened. This resulted in the sudden lowering of the awning and the striking of plaintiff by the projection arm.

The testimony of defendants' witnesses is, in substance, that the porter did not touch the ropes which controlled the operation of the awning, but that he was standing in or in front of the doorway of the establishment; that the awning was down at the time; that one of the men standing beside plaintiff reached upward and grasped the metal projection arm for the purpose of resting himself and in holding up his weight; and that this act caused the bar to descend and strike plaintiff.

■ It is our opinion that defendants would be liable in damages to the plaintiff under either of the above accounts of the accident. If it should be concluded that the injury occurred because of the porter's lowering of the awning, as testified to by plaintiff's witnesses, certainly defendants are responsible. The injured person had the right to stand on the public sidewalk, and it is not shown that he

contributed to the accident in any manner. In lowering an awning of that type, it is the duty of the operator to take notice of all persons using the walk in that vicinity, and to perform his work in a careful and prudent manner with due regard for the safety of such persons.

■ On the other hand, if the accident happened as defendants' witnesses assert, and, for the purpose of the hereinafter discussion, we shall accept that version as the correct one, the efficient cause of the descending of the projection arm and the striking of plaintiff was the failure of defendants to properly maintain the awning. The evidence is conclusive that the pipe which struck plaintiff could not have been moved or pulled downward if the necessary pin had been in its proper slot in the slide-rod. Therefore, the logical and only deduction to be drawn is that the pin was not supporting the projection arm at the time, as it should have been. The record does not disclose, and it is not contended, that either plaintiff or his companions removed the pin.

In the leading case of Thompson v. Commercial National Bank et al., 156 La. 479, 100 So. 688, 690, plaintiff was injured, as he was walking along a sidewalk, when struck by a falling portion of the metal framework of an awning attached to a building. The awning was installed and maintained jointly by the owner of the building and one of its tenants. Both of such parties were made defendants in plaintiff's suit for damages. He contended that the falling of the framework and the injuries sustained by him were caused by the failure and neglect of defendants to securely affix said awning and framework to the window and building and to maintain same in a safe condition. A solidary judgment was granted plaintiff by the trial court against both the owner and the lessee. Only the last-named defendant appealed. Its defense was that the precipitation of the metal portion resulted when the canvas and ropes supporting the awning were consumed by fire; that the fire was caused by the act of some unknown third person in carelessly throwing upon said awning, from a window above, a lighted cigar, cigarette, or other lighted article; and that the act of such person was the efficient and proximate cause of the injuries. In affirming the judgment of the trial court, with reference to the lessee's liability, the Supreme Court held that

the ignition of the ropes and canvas was not the proximate cause of the falling of the framework, but that the accident was attributed to the insecure affixing and maintenance of the metal frame to the woodwork of the window, and the improper threading of one of the side supports into the front support. The decision was founded on articles 670 and 2322 of the Civil Code, which read as follows:

"Every one is bound to keep his buildings in repair, so that neither their fall, nor that of any part of the materials composing them, may injure the neighbors or passengers, under the penalty of all losses and damages, which may result from the neglect of the owner in that respect." Article 670. •

"The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction." Article 2322.

Pertinent extracts from the Thompson Case are here quoted:

"Admitting that said company was free from fault in setting out the fire, yet the evidence discloses that there were defects in the original construction of the awning. One of the side supports became detached from the elbow of the front support, and the brackets wrenched away the screws attaching the two side supports to the window. It is therefore apparent that the metal framework of the awning, when standing alone, was not affixed to the woodwork of the window in a manner sufficiently safe, nor was one of the side supports securely threaded into the front support. Awnings so constructed on an office building are a constant menace to the public on the sidewalk below, in the event the canvas becomes ignited, whether accidently or intentionally.

"As a measure of public safety it therefore becomes necessary that such awnings should be constructed in such manner that the framework cannot give way, should the canvas of the awning become destroyed by fire. * * *

"If awnings cannot be so constructed, then they should be dispensed with. Salus populi suprema lex. * * *

"Neither ignorance of the condition of the building nor the circumstance that the defect could not be easily detected can be successfully urged as a defense by the owner. Barnes v. Beirne, 38 La.Ann. 280."

The case of Blanks v. Saenger Theaters, Inc., 19 La.App. 305, 138 So. 883, 885, decided by this court, involved an accident in which the plaintiff was injured when struck by the end of a ladder which was a part of an automatic fire escape. One end of the ladder was attached to the building about twelve feet above the level of the sidewalk, and the entire ladder was held suspended at that height, parallel with the sidewalk, by means of a counter-balancing weight and chain. As plaintiff was walking along the sidewalk beneath the suspended ladder, the unattached end of it suddenly descended upon her without warning. The ladder was propelled downward by reason of an unknown boy, about fourteen years of age, stepping upon it from a balcony adjoining its attached end. The conclusion reached by us in that case was that plaintiff was entitled to recover from the owner of the building and fire escape. In the opinion, we said:

"It would seem that the erection of any kind of contrivance or apparatus over the heads of pedestrians in any way except in an absolutely stationary manner is bound to be classified as dangerous and a constant menace. * * *

"In this case, the negligence of the defendant in the erection and maintenance of the fire escape and the stepping upon it by the boy and causing it to suddenly descend to the sidewalk and strike plaintiff were concurrent causes, and each may be said to be a proximate cause. It is not necessary to render defendant liable to show that its negligence was the sole cause. It is sufficient to show that its negligence concurred with that of the boy. * * *

"It is immaterial where the boy came from or how he got on the ladder. His stepping on it caused it to descend.

"Furthermore, it descended because of the negligent manner of its construction; being left suspended over the heads of persons in such a way as that the mere stepping on it by a boy caused it to descend upon plaintiff walking on the sidewalk."

In the case presently before us, a proximate cause of the injury was the negligent maintenance of the awning by defendants. If the pin had been in its proper place the projection arm would not have fallen. It is true that the arm would most probably have remained stationary if plaintiff's companion had not grasped it and rested himself there. But conceding arguendo that the act of such companion was a proximate cause, it concurred with defendants' negligence in effecting the injury. Defendants' establishment is located on one of the principal business thoroughfares of the city of Monroe, and many pedestrians daily use the sidewalk which the awning in question overhung. It is not improbable that persons, while standing at that location, will occasionally grasp the projecting arm that struck plaintiff, thus causing its descent. If defendants desire to and do employ an awning in front of their place of business, a duty devolves on them to so maintain it that accidents of the kind involved herein cannot occur.

■ It is no excuse that defendants were not aware of the pin being out of its proper place. Negligent ignorance of the condition of one's property is equivalent to guilty knowledge. Vidrine v. Evangeline Gravel Co., 6 La.App. 468; Atkins v. Bush, 141 La. 180, 74 So. 897, L. R.A.1917E, 809.

■ The fact that defendants were tenants of the building, and not owners, or that the owner of such building had no interest in the awning, does not, according to our view, relieve defendants from responsibility herein. If such awning had been constructed and maintained jointly by defendants and the owner of the building, they would have been joint tort-feasors and solidarily liable under the authority of Thompson v. Commercial National Bank, supra. On this point, the court in that case said:

"Although it is not disputed that this awning was erected jointly by both the owner and the lessee, yet it is contended in the brief of counsel for defendant oil company that defendant bank is solely liable in damages to the plaintiff, as said bank is the owner of the building, and, as master, had the superintendence and police of its building, and is therefore responsible for the faults committed therein. R.C.C. art. 177. * * * Plaintiff's cause of action, however, is predicated squarely upon the legal proposition that, having erected the awning in question conjointly with the owner of the building, the lessee is bound in solido with the owner, and as a joint tort-feasor, for the injury resulting to plaintiff from defects in the original construction and failure to keep said awning in safe repair."

If the tenant in that case was liable in solido with the owner, because it was jointly interested in the awning, certainly defendants are liable herein where they were alone concerned in the construction and maintenance of the structure which caused the injury.

The medical testimony in the record relating to the extent of the injuries sustained was furnished by only one physician —a witness for plaintiff. He testified that a broken nose resulted; that is, the nasal bones were broken and the septum of the nose was fractured; and that considerable treatment was required.

Plaintiff was not rendered unconscious by the blow which he received. However, we are satisfied that he endured much pain, particularly at the time of the accident. The bones and tissues of the nose are extremely delicate and sensitive, and a substantial injury to that organ necessarily produces much suffering and discomfort.

According to plaintiff's testimony, he was away from his work, because of his injuries, only a week, and no appreciable amount in wages was lost by him.

Much weight must be given to the trial court's conclusion as to the amount of damages to be awarded in a physical injury suit. We are unable to say that he erred in his award, and it will not be disturbed.

The judgment appealed from is affirmed.