CHASEZ, Judge.
The plaintiff, Thomas Foster, brought suit ex delicto against:
1. American Oil Company
*335 2. Louis I. Brill, individually, and as a partner of Brill Equipment Company
3. Dorothy A. Brill, individually, and as a partner of Brill Equipment Company
4. Brill Equipment Company, a partnership
5. H. E. Salzberg Company, Inc.
6. Brill-Salzberg Joint Venture, under New York law a joint venture comprised of Brill Equipment Company and H. E. Salzberg Company, Inc., and
7. B. & R. Excess Corporation, an insurance corporation,
to recover damages as a result of an injury he sustained while dismantling a steel storage tank. At the time of the injury he was employed by Southern Scrap Material Co., Ltd., who is not a party defendant to this action.
The B. & R. Excess Corporation filed exceptions to plaintiff’s suit. These exceptions were never tried and since this matter was tried on the merits, this Court considers plaintiff’s action against this defendant abandoned.
A review of the transactions relative to the tank on which plaintiff was injured is necessary.
American Oil Company closed its plant at Destrehan, Louisiana, where the steel storage tank on which the plaintiff was injured was located. American Oil Company sold to Brill Equipment Company (hereinafter referred to as Brill) the bulk of the heavy equipment of the refinery, including several large storage tanks for scrap and salvage. The sale was “as is, where is” and contemplated removal of the equipment and tanks from the premises as reflected by the following quotation from the contract:
“1. Buyer represents and warrants that it is experienced in the purchase, dismantling and removal of such equipment and facilities; that its representatives have visited the site and inspected the equipment, facilities, and material so that it is fully aware of the nature and condition thereof; that it understands that the equipment and facilities have been used in petroleum refining and handling and have not been cleaned or made gas free, and that it has purchased and accepted delivery of such equipment, facilities and material ‘as is’ and ‘where is.’
* * ❖ 5fS % *
“Buyer shall dismantle and remove from Seller’s premises all of the equipment and facilities which were purchased from Seller, and shall dismantle and load aboard rail cars or trucks, ready for shipment, the equipment of Seller not covered by the sale but listed in Exhibit ‘A’ of attached Schedule ‘L’
Brill thereafter formed a joint venture under the laws of New York with H. E. Salzberg Company, Inc., which became known as Brill-Salzberg Joint Venture (hereinafter referred to as Brill-Salzberg). The contract between American Oil Company and Brill was assigned to Brill-Salz-berg.
Brill-Salzberg then entered into an agreement with Southern Scrap Material Co., Ltd., (hereinafter referred to as Southern Scrap) plaintiff’s employer, to dismantle the storage tanks which it had purchased. The agreement, dated March 28, 1960, in part reads:
“1. Description of work. Contractor [Southern Scrap material Co., Ltd] shall furnish and pay all labor, materials, supplies, services, tools, equipment, utilities, transportation facilities and plant, and do and perform all things necessary for the performance and completion of the following work:
“Dismantle 55,000 and 80,000 barrel storage tanks, located on the premises of the former American Oil Refinery at Destrehan, Louisiana.”
A few days later, to-wit, on April 1, 1960, Southern Scrap purchased from Brill-Salz-berg thirteen of the tanks, which they had contracted to demolish, among which was Tank No. 12, the tank on which plaintiff was working when he was injured. All of the above sales of the tanks were for the purpose of dismantling and selling .for scrap, and all the sales were “as'is, where is.”
*336 After the above transactions took place Southern Scrap proceeded to dismantle the tanks.- The plaintiff was injured on Tank No. 12 which was owned by his employer, Southern Scrap Material Co., Ltd. While cutting the top of the tank, the plaintiff fell into the tank; he was struck by a piece of falling metal and suffered serious injuries. The plaintiff contends that the fall was caused by-a latent defect in the tank. The defendants contend that the fall was caused by the negligent manner in which the top of the tank was being disassembled.
After a trial on the merits, the trial court rendered judgment against the plaintiff. The Court held that Brill-Salzberg and Southern Scrap were in a contractor-subcontractor relationship within the trade business or occupation of each, thus a workmen’s compensation action quoad Brill-Salzberg (and likewise Brill and H. E. Salzberg, Inc., since they were parties to the j oint venture) was the exclusive remedy under LSA-R.S. 23:1601. He based this conclusion on the grounds that the sale of the 13 tanks did not change the relationship established by the March 28, 1960, agreement but at most converted it into a joint venture. He found the defendant, American Oil Company, not to be the owner of the tanks and thus not responsible for accidents or injuries occurring during the dismantling operations, and, furthermore, could not be held liable as vendor.
We find, as a matter of fact, with due deference to the Court below, that Brill-Salzberg and Southern Scrap were not in a contractor-sub-contractor relationship. The sale of the tanks to Southern Scrap was a valid sale which transferred full ownership to it. While it is true that it contained various options which would allow Brill-Salzberg to repurchase component parts after the tanks had been demolished at a stipulated price, and allowed Brill-Salzberg to sell the tanks before the demolition began, (Brill-Salzberg and Southern Scrap to share the profits equally in that event) it was still a valid contract of sale with valid consideration giving complete ownership to Southern Scrap. The only relationship between Brill-Salzberg and Southern Scrap then was that of vendor-vendee. Thus if any action lies against the defendants, Brill-Salzberg, composed of Brill and Salzberg, it would be an action ex delicto. The plaintiff argues in this Court that the defendants, American .Oil Company and Brill-Salzberg, should be liable for the damages sustained by plaintiff because he was injured on the premises under control of Brill-Salzberg and owned by American Oil Company, or all defendants as vendors, for selling an object with 'a latent vice or defect which might reasonably cause injury. For the purpose of this opinion, we may assume that the injury occurred because of a weak inner structure in the top of the tank; we, however, feel that plaintiff has failed in his burden of proof in this regard.
The plaintiff contends that the American Oil Company and Brill-Salzberg breached the duty of providing him with safe premises on which to carry on his work. Since the injury allegedly occurred as a result of a defective condition in the inner structure of the tank which, at that time, was the property of Southern Scrap, his employer, we believe, only in a technical sense, was he on the premises owned by or under control of defendants. The premises proper did not contribute to the happening of the accident, but on the allegations of the plaintiff’s petition, the alleged condition of the tank did. Therefore, this theory has no application to this case.
Plaintiff contends that the American Oil Company, Brill and Brill-Salzberg, as vendors, failed to warn him of a defective condition in the inner structure of the tank. He pitches his whole case on this omission. It would seem to be elemental that before liability of this character can be imposed it must be shown that defendants knew of the specific defect and had a duty to warn the plaintiff. If there is no such duty and knowledge there can be no breach. In this case we feel that the defendants, as-vendors, were under no duty to warn plaintiff of any defective condition in the tanks; therefore, they cannot be charged with a breach of that which did not exist.
The nature of the transaction herein can give rise to no duty on the part of the defendants to warn plaintiff of the condition of the tanks. The tanks were sold not as tanks which were in working condition and could be used for the storage of oil, but *337 as scrap which had no value except for salvage. The very nature of this transaction implies this. The defendants relied on the superior expertise of Southern Scrap in performing this type of demolition. This being so, they could expect Southern Scrap, plaintiff’s employer, to take the proper precautions in dismantling the tanks to prevent injury. In other words, if there was a duty to warn plaintiff that the top of the tank was defective, it was incumbent upon Southern Scrap to discover the defect and conduct the demolition in a manner that would be safe.
The plaintiff worked for an employer expert in demolition of objects suitable only for scrap; this business is hazardous in nature, and plaintiff assumed the risks attendant to his employment. As a matter of fact, plaintiff and his employer knew more of the conditions to expect in working on jobs of this character than the prior owners of the tanks.
The vendors of the tanks by contract exacted warranty from the vendees protecting them from any loss as a result of the demolition and removal of the tanks and plaintiff’s employer was aware of this condition in the contract.
Defendants, in our opinion, had no duty under the law to give plaintiff notice that the tanks which were to be scrapped by his employer were hazardous in any respect; and since they were not burdened with such duty the alleged omission of failure to warn plaintiff of hazards that he and his employer should have known and risks that he assumed, cannot give rise to liability on their part. Cf. Marshall v. Louisiana State Rice Milling Co., 144 La. 828, 81 So. 331 (1919); Radford v. Gibert, 12 So.2d 612 (La.App.1943).
Therefore, for the reasons above assigned, it is ordered, adjudged and decreed that the judgment of the District Court insofar as it dismisses the suit of the plaintiff against the defendants, American Oil Company, Louis I. Brill, individually, and as a partner of Brill Equipment Company, Dorothy A. Brill, individually, and as a partner of Brill Equipment Company, Brill Equipment Company, a partnership, H. E. Salzberg Company, Inc., Brill-Salzberg Joint Venture under New York law, a joint venture comprised of Brill Equipment Company and H. E. Salzberg Company, Inc.,, and B. & R. Excess Corporation, an insurance corporation, is affirmed; in all other-respects said judgment is reversed and set aside.
All costs of these proceedings in both Courts shall be borne by plaintiff.
Affirmed in part.
Reversed in part.